ANDREW MAST (CSBN 284070)
GABRIEL MARTINEZ (CSBN 275142)
MICHAEL RABKIN (ILRN 6293597)
ALBERT B. SAMBAT (CSBN 236472)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
albert.sambat@usdoj.gov
Telephone: (415) 934-5300

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA | CASE NO. CR 14-00534-004 CRB |
|---|---|
| v. | **UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. §5K1.1** |
| JAMES F. APPENRODT, | |
| Defendant. | |

The United States respectfully requests that this Court sentence defendant JAMES F. APPENRODT to (1) serve seven months of custody, (2) serve three years of supervised release, and (3) pay a criminal fine of $5,500, a $200 special assessment, and no restitution. This sentencing recommendation is based on the government's motion for a downward departure of ten percent from the low end of the Guidelines range for substantial assistance and is consistent with the plea agreement.

//

//

# BACKGROUND

Defendant JAMES F. APPENRODT is charged with participating in conspiracies to suppress and restrain competition by rigging bids to obtain selected properties offered at public auctions in San Mateo and San Francisco Counties between August 2008 and January 2011. Appenrodt began attending the auctions on behalf of another coconspirator, Joseph Giraudo, in March 2010. Presentence Report ("PSR") ¶ 15-16. Appenrodt was Giraudo's primary realtor for properties Giraudo purchased at the foreclosure auctions. Appenrodt followed Giraudo's instructions about how to bid on properties, including whether to bid or stop bidding, and did not purchase properties for himself. PSR ¶¶ 16-18. Appenrodt also accepted payoffs not to bid on Giraudo's behalf but did not keep the money for himself. PSR ¶ 18.

On October 22, 2014, Appenrodt was charged by indictment with bid rigging and mail fraud in San Mateo and San Francisco Counties. Dkt. 1. On October 6, 2017, Appenrodt pleaded guilty to two bid-rigging counts and began cooperating with the government's investigation. Dkt. 270.

Appenrodt's plea agreement reflects his participation in rigging 13 properties in San Mateo County, 2 properties in San Francisco County, and a volume of commerce of $2,134,447. PSR ¶ 19. The volume of commerce does not reflect the properties in which Appenrodt assisted Giraudo in obtaining payoff money not to bid. *Id.* Appenrodt represented Giraudo at the auctions for nine properties in which Giraudo agreed to accept payoffs not to bid. *Id.*

# ARGUMENT

A.   **Sentencing Guidelines Calculations**

   1.   **Criminal History**

In Paragraph 12 of the plea agreement, the parties agree that Appenrodt's Criminal History Category is determined by the Court. The PSR calculates Appenrodt's Criminal History Category as I since he has no criminal history. PSR ¶ 39-40.

   2.   **Offense Level**

The PSR calculates the total offense level as 11, consistent with the plea agreement. PSR ¶ 35. This calculation includes a one-level increase to the base offense level of 12 for conduct

involving the submission of non-competitive bids, a two-level increase for a volume of commerce exceeding $1 million, a two-level reduction for his role as a minor participant in the charged criminal activities, and a downward reduction of two-levels for acceptance of responsibility.  PSR ¶¶ 26-35.  U.S. Sentencing Guidelines Manual ("U.S.S.G.") §§2R1.1(b)(1), 2R1.1(b)(2)(A), 3B1.2(b) and 3E1.1(a) (U.S. Sentencing Comm'n 2016).

Under the Sentencing Guidelines, an offense level of 11 and Criminal History Category of I results in a sentence ranging from 8-14 months of imprisonment.

### 3.  Fine and Restitution

The PSR calculates a fine range of $26,669 to $133,497, consistent with the plea agreement.  PSR ¶ 67; U.S.S.G. §2R1.1(c)(1) (fine range shall be from one to five percent of the volume of commerce, but not less than $20,000).  In the plea agreement, the government agreed to recommend a fine between $5,500 and $55,000.  Dkt. 270.  In conjunction with its custodial recommendation, the government recommends a $5,500 fine.

The government recommends no restitution, based on evidence that Appenrodt did not keep any payoff money, but passed that money to a co-conspirator.  PSR ¶¶ 18-19.

**B.   Basis for Downward Departure for Substantial Assistance**

Pursuant to Section 5K1.1 of the Guidelines, the government moves for a downward departure for substantial assistance to the investigation.  The government recommends a ten percent reduction from the low end of the Guidelines range of eight months, resulting in a sentence of seven months.

The timing, significance, nature, and extent of Appenrodt's cooperation warrant a ten percent reduction.  Unlike most of the cooperating defendants in the investigation, Appenrodt began cooperating in the investigation three years after he was indicted.  After he agreed to plead guilty, Appenrodt provided a candid interview with the FBI in which he provided corroborating information regarding the operation of the conspiracy in San Mateo County, the conduct of other conspirators, particularly the "Big 5," and various bid-rigging agreements.  At this point in the investigation, most of the conduct described by Appenrodt was already known by the

//

government.  However, Appenrodt also made himself readily available to the prosecution team in the event he would be needed for testimony against the remaining co-defendants.

For these reasons, a ten percent downward departure for substantial assistance to the investigation and prosecution of these cases is appropriate.

**C.      Sentencing Recommendation**

The government's recommendation of seven months is reasonable and not greater than necessary in light of the factors articulated in 18 U.S.C. § 3553.  The government believes the Court's sentence must reflect the seriousness of the offense, promote respect for the law, and afford adequate deterrence to future bid-rigging offenses and white-collar crime generally.

Given the magnitude of the financial harm caused by Appenrodt's conduct, the government's recommendation, which includes a custodial term, is appropriate and consistent with the commentary in the applicable Guidelines.  The commentary makes clear that "prison terms for [Antitrust] offenders should be . . . common" and "alternatives such as community confinement [should] not be used to avoid imprisonment of antitrust offenders."  U.S.S.G. §2R1.1, cmt. N. 5 & Background.  Given Appenrodt's substantial assets, a fine alone—in the absence of a custodial term—would not serve as an adequate deterrent.

This was a serious, far-reaching crime.  Appenrodt was a member of a criminal conspiracy that corrupted a fair and competitive process meant to compensate mortgage holders, homeowners, and other beneficiaries following a home foreclosure.  Instead, that process was exploited for the enrichment of the conspirators.  This conduct was especially harmful given its timing during the foreclosure crisis in the late 2000s.  It bred distrust in the auction process and discouraged investors outside of the conspiracy from attending the auctions to purchase foreclosed properties.  And the fact that the conspiracy was carried out at or near the steps of local courthouses was especially egregious.

Appenrodt did not originate the conspiracies, but he participated in it willingly by facilitating it on behalf of the leader of the "Big 5," Joseph Giraudo.  Although Appenrodt did not purchase properties himself or keep the payoffs, he benefited as Giraudo's primary realtor for the resale of rigged properties.

The proposed sentence also takes into account the need for deterrence. Antirust crimes are often hard to detect, taking place in the context of conspiracies that leave few physical clues. In this case, the investigation into the corruption at the foreclosure auction took years to piece together. The potential for evading law enforcement and the resources required to investigate and prosecute such a conspiracy increases the need for tangible penalties to serve as a deterrent; otherwise, the potential financial upside and low likelihood of getting caught makes engaging in this type of criminal conduct even more enticing. The pervasive nature of this conspiracy also increases the need for deterrence. Dozens of investors thoroughly corrupted the auctions in multiple counties for over two years, recruiting new members, intimidating newcomers, and assuming—as Appenrodt likely did—that they would never be held accountable for rampant bid rigging. Sentences commensurate with the Guidelines will send a clear message across the industry, including to those who might otherwise perceive themselves as beyond the reach of the law, that bid rigging is unacceptable.

Probation recommends a dramatic variance from Appenrodt's Guidelines calculations that would cut his term of incarceration down to zero—eight months less than the low end of the Guidelines range. As discussed above, a variance is not warranted, especially given the magnitude of the financial harm caused by Appenrodt's conduct. A seven-month sentence adequately reflects Appenrodt's history and characteristics, including his decision to accept responsibility—albeit very late in the investigation—instead of proceeding to trial, and his willingness to cooperate in the investigation, while also accounting for the seriousness of the offense and the need to provide adequate deterrence.

//
//
//
//
//
//
//

U.S.' SENT'G MEMO                                  5
*United States v. Appenrodt*, CR 14-00534-004 CRB

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court grant the government's motion for a downward departure of 10 percent from the low end of the guidelines range for substantial assistance and sentence defendant Appenrodt to (1) serve seven months of custody, (2) serve three years of supervised release, and (3) pay a criminal fine of $5,500, a $200 special assessment, and no restitution.

Dated: April 19, 2018                                            Respectfully submitted,

/s/
ALBERT B. SAMBAT
Trial Attorney
United States Department of Justice
Antitrust Division